The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| WEYERHAEUSER COMPANY, a Washington corporation, | NO.  2:18-cv-00585-JLR |
| Plaintiff, | PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST ALL REMAINING DEFENDANTS EXCEPT XL CATLIN SYNDICATE 2003 |
| v. | |
| NOVAE SYNDICATE 2007; APOLLO LIABILITY CONSORTIUM 9984; ANV CASUALTY CONSORTIUM 9148; SCOR UK COMPANY LTD; STARSTONE SYNDICATE 1301; XL CATLIN SYNDICATE 2003; ALLIANZ UNDERWRITERS INSURANCE COMPANY; HISCOX DEDICATED CORPORATE MEMBER LIMITED as representative member of Syndicate 33 at Lloyd's; STARR UNDERWRITING AGENTS LTD.; LLOYD'S SYNDICATE CVS 1919, | NOTE ON MOTION CALENDAR: Friday, September 21, 2018

ORAL ARGUMENT REQUESTED |
| Defendants. | |

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST ALL REMAINING DEFENDANTS EXCEPT XL CATLIN SYNDICATE 2003
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

# I.  INTRODUCTION

Plaintiff Weyerhaeuser Company brought this lawsuit seeking a judgment that it is not required to arbitrate its coverage dispute with the defendants, its liability insurers.  The policies issued by the defendant insurers (the "Policies") do not include arbitration clauses; however, the insurers contend that an arbitration clause in an underlying policy is incorporated by reference into their Policies.  The insurers are incorrect, for two independent reasons.

First, by their express terms the Policies incorporate only those terms from the underlying policy that do not conflict with endorsements that Underwriters attached to their own Policies—that is, the clauses that Underwriters chose to include in their own Policies trump any inconsistent terms in the underlying policy.  The Policies all contain endorsements—called "Service of Suit" clauses—in which the defendants explicitly agreed to "submit to the jurisdiction of a Court of competent jurisdiction within the United States" in the event of a dispute over their failure to pay Weyerhaeuser's claims.  The plain meaning of the Policies' language and the applicable rules of insurance policy interpretation lead only to the conclusion that coverage disputes under the Policies are to be decided in the courts of the United States.  Further, the only court to explicitly consider the question held that an arbitration clause is not incorporated from an underlying policy into a higher-level policy where the latter includes a service of suit clause like the one appearing in the Policies here.  *Oakley, Inc. v. Exec. Risk Specialty Ins. Co.*, 2011 WL 13137931 (C.D. Cal. Feb. 24, 2011).  It reasoned that requiring the policyholder to arbitrate claims for the insurer's failure to pay was inconsistent with the insurer's explicit agreement to be sued in court for such claims.  *Id.*, at **2-3.

Second, the Washington Supreme Court has held that RCW 48.18.200(b) invalidates mandatory arbitration clauses in insurance contacts issued to Washington policyholders like

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 1
No. 2:18-cv-00585-JLR

**GORDON
TILDEN
THOMAS
CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

Weyerhaeuser. *State, Dep't of Transp. v. James River Ins. Co.*, 176 Wn.2d 390, 399-400, 292 P.3d 118 (2013). Defendants will argue that this statute is preempted by a treaty called the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201, *et seq.* ("Convention"). However, while the Convention does preempt anti-arbitration laws of general application, under the McCarran-Ferguson Act ("MFA"), state laws—such as RCW 48.18.200(b)—specifically precluding arbitration clauses in insurance contracts are not preempted. Instead, such laws "reverse-preempt" the Convention. *See* 15 U.S.C. § 1012(b).

For these reasons, Weyerhaeuser respectfully requests that this Court enter summary judgment and hold that Weyerhaeuser's disputed coverage claims are not subject to mandatory arbitration.

## II.  STATEMENT OF FACTS

### A.  Weyerhaeuser's Underlying Liabilities and Applicable Insurance Policies

This declaratory judgment action arises out of a substantial liability that Weyerhaeuser has incurred for alleged property damage and bodily injury resulting from defects in a Weyerhaeuser product known as TJI Joists with Gen 4 Flak Jacket Protection, a fire-retardant engineered wood product used in residential home construction to support flooring. The claims relate to "off-gassing" of urea formaldehyde, one of the components of the Gen 4 Flak Jacket Protection. Weyerhaeuser has incurred several hundred million dollars of damages associated with the claims, including costs of defenses and settlement.

Weyerhaeuser purchased multiple layers of excess liability insurance policies covering the relevant period, the 2016-17 policy year. The policies, 13 in all issued by 12 different insurers, comprise a six-layer "tower" that provides a total of $300 million in liability limits. The first-layer policy, issued by Lex-London (which has paid in full and is not a defendant

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 2
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

herein), provides a $25 million policy limit attaching above a $10 million self-insured retention. It includes a mandatory arbitration clause requiring arbitration of disputes in London under English procedural law (the "Arbitration Clause").  Declaration of John Lambdin in Support of Motion for Summary Judgment ("Lambdin Decl."), Ex. A.  Each of the 12 excess policies sitting atop the Lex-London policy provides a share of the total $300 million tower limit.

The Lex-London policy is designated as the "Lead Underlying Policy," and the other policies provide that they "follow form" to, or incorporate by reference, the terms and conditions of the Lex-London policy, except to the extent that the latter are inconsistent with terms endorsed to the former.  *See, e.g., id.*, Ex. C at p. 70 ("The Company agrees that, except as may otherwise be endorsed to this Policy, this Policy will follow:  (1) the same terms, definitions, exclusions and conditions as are, at inception hereof, contained in the Lead Underlying Policy[.]").  This motion addresses whether a subset of those policies sitting above the Lex-London Policy—those issued by the defendants to this action (the Policies)[1]—incorporate the Arbitration Clause by virtue of this follow-form language.

As noted above, the Policies lack any endorsement or other term expressly requiring arbitration.  To the contrary, each contains an endorsement entitled "SERVICE OF SUIT CLAUSE (U.S.A.)," which provides in relevant part:

> It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), **will submit to the jurisdiction of a Court of competent jurisdiction within the United States**.

---

[1] Allianz Underwriters Insurance Company was dismissed from this action by stipulation after it agreed not to seek to compel arbitration of Weyerhaeuser's coverage claim under that policy.  Dkt. 23.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 3
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

*See, e.g., id.,* Ex. C at p. 81 (emphasis added).  Weyerhaeuser contends that the service of suit clause, unaccompanied by any arbitration endorsement appearing in the subject Policies, unmistakably conveys an intent to resolve any coverage disputes in the courts of the United States.  However, because it appeared that at least some of the insurers might contend that, despite the service of suit clause, the Arbitration Clause is effectively incorporated into the Policies, Weyerhaeuser filed the instant action.

**B.      Proceedings in the English High Court**

One of the defendant insurers, XL Catlin Syndicate 2003 ("XL Catlin"), apparently was unhappy having this Court decide this issue of policy composition, despite the fact that it issued the policy to a Washington corporation and that its policy explicitly calls for application of Washington law to such a dispute.  Four days after being served with this action, XL Catlin commenced a competing action in the English High Court in London and secured a "no-notice" Interim Order purporting to require Weyerhaeuser to cease litigating the instant case against XL Catlin and instead allow the English court to decide the issue of the content of its policy.

Weyerhaeuser has abided by that order, and does not address this motion to the policy issued by XL Catlin.[2]  A hearing before the English High Court on the question of arbitrability of disputes under that policy is scheduled for November 28, 2018.

**C.      Proceedings Before this Court**

Concerned that other defendant insurers might follow XL Catlin's lead by seeking to block proceedings in this Court, Weyerhaeuser sought—and the remaining defendants stipulated to—a TRO preventing defendants from taking any action to have the arbitrability issue decided in any court other than this one.  Dkt. 17.  Under that Order, defendants have reserved the right

---

[2] This action remains stayed as to XL Catlin.  *See* Dkts. 14 and 33.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 4
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

to ask this Court to lift the injunction in the event the English High Court makes a final determination regarding the arbitrability question as to the XL Catlin policy, but Weyerhaeuser retains the right to contest any such request.

The issue of arbitrability presents only questions of law for determination for the Court, and Weyerhaeuser now moves for summary judgment on that issue.

## III.  ARGUMENT

**A.**     **As a matter of contract law, the Service of Suit clauses in the Policies preclude incorporation of Lex-London's arbitration clause.**

      **1.**     **Under the plain meaning of the Service of Suit clauses, Underwriters agreed, in the event of any coverage dispute, to "submit to the jurisdiction of a Court of competent jurisdiction within the United States."**

The Service of Suit endorsements that the defendant insurers chose to attach to their Policies provide in relevant part as follows:

> It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

> It is further agreed that service of process in such suit may be made upon Mendes & Mount, LLP, 750 Seventh Avenue, New York, N.Y. 10019-629, USA and/or their nominees and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

Lambdin Decl., Ex. C, p. 81.  The language is clear:  ***in the event of a coverage dispute, Underwriters agree to submit to the jurisdiction of the U.S. courts***.  There is no mention of

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 5
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

1
2
3    arbitration, either in the Service of Suit endorsements or anywhere else in the defendants'
4
5    Policies.
6
7            The insurers seek to evade the plain meaning of their policy language by pointing to the
8
9    arbitration clause that first-layer insurer Lex-London included in its policy.  The Insurers'
10
11   attempt to incorporate that term is irreconcilable with their own policy language.  First, while the
12
13   defendants' Policies presumptively "follow form to," or incorporate the terms of, the Lex-
14
15   London policy, the defendants made clear that, in the event of a conflict, language in their own
16
17   policies trumps that of the Lex-London policy.  This exception to the following-form principle is
18
19   established not once, but twice in each of the Policies:
20
21                   The Company hereby agrees, ***subject to the terms, definitions,***
22                   ***exclusions and conditions contained in this Policy***, to pay those
23                   sums which the Insured shall be legally obligated to pay as
24                   damages by reason of the liability covered by and as more fully
25                   defined in the Lead Underlying Policy [the Lex-London Policy].
26
27                   The Company agrees that, as ***except as may otherwise be endorsed***
28                   ***to this Policy***, this Policy will follow . . . the same terms,
29                   definitions, exclusions and conditions as are, at inception hereof,
30                   contained in the Lead Underlying Policy[.]
31
32   *Id.* at p. 70 (emphasis added).  The two terms plainly conflict:  the Lex-London clause requires
33
34   coverage disputes to be arbitrated in London; defendants' Service of Suit endorsements
35
36   unqualifiedly provide that, in the event of a coverage dispute, the defendants will submit to the
37
38   jurisdiction of the U.S. courts.  Accordingly, under the terms of their Policies, defendants'
39
40   Service of Suit endorsements control.
41
42           The defendants may claim they intended to adopt Lex-London's arbitration term, and
43
44   added their own Service of Suit endorsements solely for the purpose of enforcement of an
45
     arbitral award, *i.e.*, allowing such an award to be enforced in the U.S. courts.  This argument

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 6
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

fails, first, because the defendants' Service of Suit endorsements say no such thing—they are unqualified and make no reference to arbitration proceedings.

Second, Lex-London's Service of Suit clause demonstrates how easy it would have been for the defendants to bring about the result that they now seek.  Lex-London's Service of Suit clause provides in relevant part:  "***Solely for the purpose of effectuating arbitration***, in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States."  *Id.*, Ex. B, p. 50 (emphasis added).  The Washington courts hold that "[i]n evaluating the insurer's claim as to meaning of language used, courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question."  *Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 123 Wn.2d 678, 688, 871 P.2d 146 (1994) (quoting 13 John A. Appleman & Jean Appleman, *Insurance Law & Practice* § 7403 (1976).  Here, the principle in *Lynott* weighs heavily in favor of Weyerhaeuser's far more natural reading of the policy language.

Further, the summary notations in the "Declarations" pages of the defendants' Policies, which summarize how those Policies address "Choice of Law and Jurisdiction," are fully consistent with Weyerhaeuser's interpretation of Underwriters' policies.  Those Declarations pages contain the following:

**CHOICE OF LAW**
**AND JURISDICTION:**  NMA 1998 Service of Suit Clause (USA), as attached.

As per Lead Underlying Policy

*Id.*, Ex. C at p. 65.  The most natural reading of this notation is that "Jurisdiction" is governed by the unqualified "NMA 1998 Service-of-Suit Clause (U.S.A.), as attached," which necessarily

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 7
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

trumps the analogous and conflicting Service-of-Suit Clause in the Lex-London Policy; whereas "Choice of Law" is controlled by the "Leading Underlying Policy," that is, the Lex-London policy, which selects the law of the State of Washington as the substantive law governing the contract. *Id.*, Ex. B., p. 49.

In sum, the Court need look only to the plain meaning of defendants' Policies to conclude that coverage disputes thereunder are to be litigated in the courts of the United States.

2.   **At best for the defendants, the Policy language is ambiguous—reasonably susceptible to more than one interpretation—and therefore must be interpreted in favor of the insured and against compelled arbitration.**

Weyerhaeuser submits that the above-described reading of defendants' Policy language, resulting in coverage disputes being subject to litigation in the U.S. courts, is not an "interpretation" at all. Rather, it is simply the plain meaning of unambiguous policy language. However, Weyerhaeuser need not establish that the language unambiguously favors its position, or even that it is the "best" interpretation. Instead, at best for the defendants, the subject Policy terms concerning arbitration and litigation are ambiguous, meaning reasonably susceptible to more than one interpretation. *American Star Ins. Co. v. Grice*, 121 Wn.2d 869, 854 P.2d 622 (1993). When this is the case, the Court is bound to adopt the interpretation that favors Weyerhaeuser. *Id.*; *see also Vadheim v. Cont'l Ins. Co.*, 107 Wn.2d 836, 840-41, 734 P.2d 17 (1987).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 8
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

     3.      **The sole on-point decision confirms that Underwriters' unqualified promise to submit coverage disputes to the U.S. courts controls over any following-form clause.**

The only court to explicitly address the question at hand held that the arbitration clause was ***not*** incorporated.  In *Oakley, Inc. v. Exec. Risk Specialty Ins. Co.*, 2011 WL 13137931 (C.D. Cal. Feb. 24, 2011), the policy at issue contained a service-of-suit endorsement functionally identical to the one in the Policies here.  2011 WL 13137931 at *2.  It also followed form to an underlying policy, "except as specifically set forth in the terms, conditions or endorsements of this policy"—virtually the same limiting language as the Policies.  *Id.*  The underlying policy had a broad mandatory arbitration provision, and the insurer argued that the arbitration clause required Oakley to arbitrate its coverage dispute.  It argued that the service of suit clause merely gave Oakley the right to bring a judicial proceeding to enforce any award that resulted from an arbitration.  *Id.* at *2.  In making that argument it relied on cases holding that an arbitration provision contained in the same policy as a service-of-suit clause relegates the latter to suits to enforce arbitral awards.  *Id.* (citing cases).

The court observed that those cases "are not entirely on point because they did not require the courts to confront the incorporation issue in the face of a conflicting term in the excess policy."  *Id.*  With respect to that question, the court cited precedents recognizing "an exception to the rule" of incorporation:  arbitration provisions will not be incorporated to the extent they "would conflict with terms specifically included in the excess policy."  *Id.* (citing *C.B. Fleet Co., Inc. v. Aspen Ins. UK Ltd.*, 743 F. Supp.2d 575, 584 (W.D. Va. 2010) ("[B]y the express terms of the Aspen Insurance Binder ***and in the absence of any conflicting language contained therein (of which there is none)***, the Swiss Re arbitration agreement was also made a term of the Aspen Insurance Binder . . . the Court finds that the weight of authority within the

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 9
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

Fourth Circuit supports the proposition that the policy of an excess insurer that 'follows form' of the underlying insurer's policy language would incorporate the terms, conditions and coverage contained therein, ***except to the extent there is a conflict***")) (emphasis added).

The court observed that, because the cases relied upon by the insurer involved policies that contained in themselves both a service-of-suit clause and an arbitration clause, the courts "were forced to devise a means of reconciling those provisions." *Id.* at *3 n.3. They did so by relegating the service-of-suit clause to suits to enforce arbitral awards. *Id.* However, because the arbitration clause in *Oakley* was incorporated only to the extent it did not conflict with the excess policy, the question of "reconciling" two conflicting provisions in the same policy never arose. *Id.* at *3. The court also observed that under its ruling, the arbitration clause would retain some effect because the parties would remain obligated to arbitrate disputes other than those arising from the insurer's failure to pay. *Id.*

Applying this limitation on the incorporation of arbitration clauses, the *Oakley* court concluded that "complete incorporation of the Primary Policy's arbitration provision would give rise to a conflict between the arbitration provision and the Excess Policy's service of suit endorsement." *Id.* at *3. Complete incorporation "would eviscerate Oakley's contractual right to pursue claims relating to [the insurer's] failure to pay amounts due under the Excess Policy in a court of law" by mandating that arbitration was the exclusive dispute resolution mechanism. *Id.* Moreover, it would remove Oakley's right to choose a forum by freeing the insurer from its obligation, under the service-of-suit clause, to "submit to the jurisdiction of a court of competent jurisdiction within the United States." *Id.* Accordingly, the court did not incorporate the arbitration clause with respect to claims for the insurer's failure to pay amounts due under the policy. *Id.*

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 10
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

*Oakley* is directly on point, and appears to be the only decision that squarely addresses the issue before the Court.  The Court should follow the reasoning of its sister court, and thereby enforce the plain meaning of the Service of Suit clauses in the Policies and respect Washington's public policy against mandatory arbitration of insurance coverage disputes.

**B.     RCW 48.18.200(b) would invalidate the arbitration clause even if it could be incorporated into the policies under contract principles.**

**1.     RCW 48.18.200(b) forbids mandatory arbitration clauses in policies issued to Washington policyholders.**

For the foregoing reasons, under the governing Washington contract law, the defendants' Policies contain no arbitration clauses.  Accordingly, the Court need go no further to grant Weyerhaeuser's motion.  However, were the Court to conclude that the Policies do incorporate Lex-London's arbitration clause, that clause is unenforceable under Washington law.  RCW 48.18.200 provides that "[n]o insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any condition, stipulation, or agreement . . .  (b) depriving the courts of this state of the jurisdiction of action against the insurer."  It further provides that "[a]ny such condition, stipulation, or agreement in violation of this section shall be void."  In *State Department of Transp. v. James River Ins. Co.*, 176 Wn.2d 390, 399-400, 292 P.3d 118 (2013), the Washington Supreme Court held that "RCW 48.18.200 prohibits binding arbitration agreements in insurance contracts" issued to Washington policyholders, and that such clauses are therefore "unenforceable."  Here, the Policies were all issued to a Washington policyholder—Weyerhaeuser.  As such, RCW 48.18.200 precludes the incorporation of the Arbitration Clause into those Policies.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 11
No. 2:18-cv-00585-JLR

**GORDON
TILDEN
THOMAS
CORDELL**

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

**2.      RCW 48.18.200(b) is not preempted by the Federal Arbitration Act.**

State statutes of general application that purport to prohibit arbitration agreements are

arguably preempted by the Federal Arbitration Act ("FAA") on the grounds that they are

inconsistent with federal law and policy relating to arbitration of disputes.  *See James River*, 176

Wn.2d at 400.  However, in 1945 Congress enacted the MFA, which provides that

> [n]o Act of Congress shall be construed to invalidate, impair, or
> supersede any law enacted by any State for the purpose of
> regulating the business of insurance ... unless such Act specifically
> relates to the business of insurance.

15 U.S.C. § 1012(b).  Because RCW 48.18.200 was enacted "for the purpose of regulating the

business of insurance," and because the FAA does not "specifically relate[] to the business of

insurance," the former "reverse preempts" the latter under the MFA.  *James River*, 176 Wn.2d at

401-02.

**3.      RCW 48.18.200(b) is not preempted by the Convention.**

**a.      Several courts have correctly applied the MFA to hold that the
Convention is reverse preempted by state laws regulating insurance.**

The Convention obligates each signatory to "recognize an agreement in writing under

which the parties undertake to submit to arbitration all or any differences which have arisen or

which may arise between them in respect of a defined legal relationship."  Convention, Art. II,

1958 WL 92507.  The Convention was implemented by Congress via Section 2 of the FAA, 9

U.S.C. § 201 ("The Convention on the Recognition and Enforcement of Foreign Arbitral Awards

of June 10, 1958, shall be enforced in United States courts in accordance with this chapter."); *see*

*Stephens v. American International Ins. Co.*, 66 F.3d 41, 45 (2nd Cir. 1995).  Defendants will

argue that RCW 48.18.200(b) is preempted by the Convention even if it is not preempted by the

FAA itself.  Several courts have correctly rejected that argument.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 12
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

As noted above, the MFA reverse-preempts any "Act of Congress" that purports to invalidate a state law regulating the business of insurance, unless such act of Congress "specifically relates to the business of insurance."  15 U.S.C. § 1012(b).  The Convention clearly does not "specifically relate[] to the business of insurance."  Accordingly, it is reverse preempted by the MFA so long as it qualifies as an "Act of Congress."  The first court to consider this issue held that the Convention is an Act of Congress.  *Stephens*, 66 F.3d at 45.  It reasoned that the Convention is a treaty, and treaties do not have binding domestic force in U.S. courts unless they either: (1) operate of themselves, without the aid of any domestic legislation; or (2) are ***given*** domestic force by virtue of such legislation.  *Id.*  Because the Convention relies on Section 2 of the FAA for its domestic enforceability, and because Section 2 of the FAA is an Act of Congress, the court held that the MFA precludes the Convention from preempting state laws regulating insurance.  *Id.*

The U.S. District Court for the Eastern District of Missouri recently followed *Stephens* to hold that the Convention did not preempt a Missouri statute that authorized arbitration agreements but carved out from that authorization "contracts of insurance."  *Foresight Energy, LLC v. Certain London Market Ins. Cos*, 311 F. Supp.3d 1085 (E.D. Mo. 2018).  It reasoned that "the non-self-executing Convention does not provide a rule of decision for U.S. courts," and that the Convention's capacity to preempt state law exists only by virtue of its implementing legislation, Section 2 of the FAA.  *Id.*, at 1100.  As such, the Convention must be treated as an "Act of Congress" that is reverse-preempted by state law under the MFA.  *Id.*

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 13
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

### b. The Court should not follow the holdings of either of the two courts that applied contradictory reasoning to conclude that the Convention is not reverse-preempted.

Defendants will rely on the contradictory decisions of two courts that have held that the Convention is not reverse-preempted by state laws regulating insurance.  This Court should reject the reasoning of both in favor of the sound reasoning of *Stephens* and *Foresight.*

### (1)   *Safety National*

In *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London,* 587 F.3d 714 (5th Cir. 2009), a majority of an *en banc* panel held that a Louisiana statute similar to RCW 48.18.200(b) was preempted by the Convention.  It reasoned that Congress did not intend the phrase "Act of Congress," as it appears in the MFA, to include treaties such as the Convention, regardless of whether such treaties are self-executing or require an Act of Congress in order to have the force of law in U.S. courts.  *Id.* at 722-24.  It further reasoned that the "law" it was being asked to apply to preempt the Louisiana statute was the Convention itself, and not the Act of Congress that implemented it.  *Id.* at 724-25.

The majority's reasoning in *Safety National* was explicitly rejected by:  (1) a spirited three-judge dissent in that case; (2) an additional judge who concurred in the judgment in that case but recognized the flaws in the majority's analysis; and (3) the district court in *Foresight* (supra).  The *Safety National* dissent observed that the majority's holding—that a non-self-executing treaty, by itself, can preempt state law—was "trail-blazing" and a "doctrinal novelty." *Safety National*, 587 F.3d at 738.  It noted that the U.S. Supreme Court had itself distinguished between treaties that are self-executing and those that were not, and held only that the former "have the force and effect of a legislative enactment" and as such have equal standing to federal statutes for purposes of the Supremacy Clause.  *Id.*, at 739, *quoting Whitney v. Robertson*, 124

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 14
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

U.S. 190, 194 (1888); *see also Medellin v. Texas*, 552 U.S. 491 (2008) (International Court of Justice ruling did not have preemptive effect under Supremacy Clause because the treaty under which it could be enforced was not self-executing) (citing *Whitney*, supra).  As such, the dissent reasoned, without an Act of Congress a non-self-executing treaty like the Convention "remains as inert as a provision of a model code" for purposes of enforcement of its terms in domestic courts and for purposes of federal preemption of state law.  *Id.* at 740.[3]

One judge on the *Safety National* panel concurred in the majority judgment (finding preemption), but agreed that the three-judge dissent had "persuasively refute[d]" the majority's reasoning that the provisions of a non-self-executing treaty have the preemptive effect of federal law.  *Id.* at 733.  And, in reaching its holding that the state law there at issue was not preempted by the Convention, the district court in *Foresight* held that the *Safety National* dissent "convincingly explicates why the majority's reasoning in that case is flawed."  311 F. Supp.3d at 1097.  It appears that no court has followed the *Safety National* majority's reasoning.

### (2)   *ESAB Group*

In *ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 385-86 (4th Cir. 2012), the Fourth Circuit acknowledged the majority opinion in *Safety National* but then declined to follow its reasoning.  Instead, it held that despite the MFA's broad language—forbidding **any** "Act of Congress" to preempt state insurance law—in fact Congress intended that its reach be "limited to legislation within the domestic realm" and that it not extend to legislation related to international matters.  *Id.* at 388.  It found support for this holding in *American Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003).  There, the Supreme Court held that California's Holocaust Victim Insurance

---

[3]  The dissent also observed that "the consensus of legal scholars" is that implementing statutes, rather than the treaties themselves, have the force of law in U.S. courts such that they can be the source of preemption.  *Id.* at 741-42 (citing and discussing sources).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 15
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

Relief Act was impliedly preempted by the Executive Branch's agreements with European

nations relating to Holocaust reparations, because it "compromised the very capacity of the

President to speak for the Nation with one voice in dealing with other governments" as to such

matters.  *Id.* at 424 (internal citation omitted).  It went on to hold that the MFA did not call for

reverse-preemption of those bilateral executive agreements, because the latter constituted

"executive conduct in foreign affairs" rather than "Act[s] of Congress."  *Id.* at 428.

 As the district court aptly observed in *Foresight*, the *ESAB* court erred by ignoring the

plain language of the MFA and instead embarking on a search for Congressional "intent" outside

of the text of the statute.  *Foresight*, 311 F. Supp.3d at 1098.  It compounded that error when it

relied on *Garamendi* to limit the preemptive effect of the MFA over Acts of Congress;

*Garamendi* said ***nothing*** on that subject, because the "law" preempting the California statute in

that case was comprised of executive agreements with foreign countries—agreements that, the

Court observed, "requir[ed] no ratification by the Senate or approval by Congress" to be

effective.  *Garamendi*, 539 U.S. at 415.  Indeed, in reaching its holding, the *Garamendi* Court

placed great weight on the recognized unilateral executive authority in the area of settling war-

related claims of American citizens against foreign entities.  *Id.* at 415-16 ("Making executive

agreements to settle claims of American nationals against foreign governments is a particularly

longstanding practice . . . Acceptance of this historical practice is supported by a good pragmatic

reason for depending on executive agreements to settle claims against foreign corporations

associated with wartime experience.").  That rationale has no application where, as here, the

question is reverse preemption under the MFA of a commercial treaty that ***is*** enacted and made

effective domestically by an Act of Congress.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 16
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

1
2

**C.     Judge Martinez's ruling in *Pacific West Securities* provides no guidance to this Court because it did not address the issues presented here.**

3
4
5

In *Pacific West Securities, Inc., v. Illinois Union Ins. Co.,* 2012 WL 3763551 (W.D.

6

Wash. Aug. 29, 2012), Judge Martinez assumed, without analysis, that an arbitration clause was

7
8

incorporated into an excess policy, and then went on to hold that the arbitration clause was

9
10

enforceable notwithstanding the presence of a service of suit clause in that excess policy.

11
12

Weyerhaeuser expects defendants to rely on this case to oppose this motion.  That reliance will

13
14

be misplaced, however, for two reasons.

15

16     1.     ***Pacific West Securities* did not address the specific questions that arise when an insurer seeks to incorporate an arbitration clause into a policy that contains a service of suit clause.**
17
18

19
20

*Pacific West Securities* involved a primary policy that contained its own arbitration

21
22

clause and an excess policy that incorporated the terms and conditions of the primary policy.

23
24

However, the court held that the latter required arbitration of coverage disputes without

25
26

examining the issue addressed in *Oakley*, that is, whether such incorporation was appropriate as a

27
28

matter of contract construction and interpretation.  Instead it began with an unexamined

29
30

***assumption*** that the arbitration clause was part of both policies. *Id.* at *1 ("Both policies

31
32

contained arbitration clauses"); *see also id.* at *3 (without discussion, court began "Legal

33
34

Analysis" by referring to both policies as "contain[ing] both an arbitration clause and a service of

35
36

suit clause" and by again stating—again without analysis—that "both insurance contracts

37
38

contained an arbitration clause").  Indeed, the only indication that the source of the arbitration

39
40

clause in the excess policy was the arbitration clause in the primary policy appeared in a

41
42

footnote, and there again the court did not examine the implications of that incorporation. *Id.* at

43
44

n.1.

45

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 17
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

Having made that assumption and having skipped over the incorporation question, the court went on to rely on cases where the policies at issue contained in themselves both the arbitration and service of suit clauses. *Id.* at *4 (citing cases). Of course, none of those cases raised—and none of those courts addressed—the incorporation question considered by the *Oakley* court. *Pacific West Securities* is inapplicable to the issue presented here, as are the other cases enforcing arbitration provisions that appear in the same policy as a service of suit clause. As the *Oakley* court correctly observed, those cases "are not entirely on point because they did not require the courts to confront the incorporation issue in the face of a conflicting term in the excess policy." 2011 WL 13137931 at *2.

### 2. *Pacific West Securities* did not address RCW 48.18.200(b).

In deciding to enforce the arbitration clause at issue in that case, the *Pacific West Securities* court relied in part on the **general** Washington State policy favoring arbitration of disputes. 2012 WL 3763551 at *4. It did not consider that RCW 48.18.200(b) carved out a clear exception to that general policy by disallowing mandatory arbitration of disputes arising from insurance policies, and there is no indication that either party even raised that issue. Also, the court's ruling predated the Washington Supreme Court's decision in *James River* (*supra*) and as such that Court had not yet held that RCW 48.18.200(b) precluded arbitration clauses in insurance contracts. Accordingly, *Pacific West Securities* is irrelevant to the question of whether that statute precludes incorporation of the Arbitration Clause here.

## IV. CONCLUSION

Defendants expressly agreed to submit to the jurisdiction of this Court for adjudication of disputes over coverage under the Policies, and they cannot evade that promise by incorporating an arbitration clause that would defeat it. Even if they could do so as a matter of contract law,

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 18
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

RCW 48.18.200(b) invalidates mandatory arbitration clauses in insurance policies in any event.

For each of these reasons, the Court should enter summary judgment in favor on Weyerhaeuser

and rule that it may proceed in this forum with its claim for defendants' failure to pay as

promised under the Policies.

DATED this 30th day of August, 2018.

**GORDON TILDEN THOMAS & CORDELL LLP**
Attorneys for Plaintiff

By    *s/Franklin D. Cordell*
Franklin D. Cordell, WSBA #26392
Michael P. Brown, WSBA #45618
Greg Pendleton, WSBA #38361
Brendan Winslow-Nason, WSBA #39328
600 University Street, Suite 2915
Seattle, Washington  98101
206.467.6477
fcordell@gordontilden.com
mbrown@gordontilden.com
gpendleton@gordontilden.com
bwinslow-nason@gordontilden.com

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 19
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101-4172
206.467.6477

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of August, 2018, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to the following:

**Counsel for Defendants Novae Syndicate 2007, Apollo Liability**
**Consortium 9984, ANV Casualty Consortium 9148, Scor UK**
**Company, Ltd. and Starstone Syndicate 1301**:

Curt H. Feig
Christopher W. Nicoll
Nicoll Black & Feig PLLC
1325 Fourth Avenue, Suite 1650
Seattle, WA 98101

**Counsel for Defendants Hiscox and Starr**

Mark P. Scheer
Jennifer Crow
Scheer Law Group LLP
701 Pike Street, Suite 2200
Seattle, WA 98101

DATED this 30th day of August, 2018, at Seattle, Washington.

*s/ Franklin D. Cordell*
Franklin D. Cordell, WSBA #26392

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AGAINST ALL REMAINING DEFENDANTS EXCEPT XL
CATLIN SYNDICATE 2003 - 20
No. 2:18-cv-00585-JLR

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101-4172
206.467.6477