UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEYERHAEUSER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NOVAE SYNDICATE 2007, et al.,<br><br>Defendants. | CASE NO. C18-0585JLR<br><br>ORDER DENYING MOTION TO REOPEN SUMMARY JUDGMENT BRIEFING |

## I. INTRODUCTION

Before the court is Defendants Hiscox Dedicated Corporate Member Limited as representative member of Syndicate 33 at Lloyd's and Starr Underwriting Agents Ltd.'s (collectively, "Hiscox/Starr") motion to reopen briefing on Plaintiff Weyerhaeuser Company's ("Weyerhaeuser") motion for summary judgment. (MTR (Dkt. # 79); *see also* MSJ (Dkt. # 36).) Weyerhaeuser opposes the motion. (Resp. (Dkt. # 82).) Hiscox/Starr filed a reply. (Reply (Dkt. # 85).) The court has considered the motion, the parties' submissions concerning the motions, the relevant portions of the record, and the

applicable law. Being fully advised,[1] the court DENIES Hiscox/Starr's motion to reopen summary judgment briefing.

## II. BACKGROUND

For the 2016-17 policy year, Weyerhaeuser purchased a layered program of excess liability insurance, including policies issued by Hiscox/Starr and Defendants Novae Syndicate 2007 ("Novae"), Apollo Liability Consortium 9984 ("Apollo"), SCOR UK Company Ltd. ("SCOR"), Starstone Syndicate 1301 ("Starstone"), and ANV Casualty Consortium 9148 ("ANV") (collectively, "Defendants"), among other carriers. (Lambdin Decl. (Dkt. # 37) ¶ 2.) The policies form a six-layer "tower" that provides a total of $300 million in liability limits. (*Id.*) At issue in this action are four policies issued by Defendants ("the Policies"). (*See* Compl. (Dkt. # 1).) Weyerhaeuser seeks a declaratory judgment that it is not required to arbitrate in the United Kingdom coverage disputes that may arise under the Policies. (*See id.* ¶¶ 35-37.)

Non-party Lex-London Casualty Corp. ("Lex-London"), Weyerhaeuser's primary carrier, issued the tower's first-layer policy ("the Lex-London Policy"). (Lambdin Decl. ¶ 2, Ex. B.) The Lex-London Policy includes an arbitration "endorsement" that requires any dispute "arising out of or relating to" to the Lex-London Policy to be arbitrated in London. (*Id.* at 41.[2]) The Policies all "follow form" to, or incorporate by reference, the

---

[1] No party requests oral argument on the motion (*see* MTR; Resp.), and the court concludes that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] When citing the Lex-London Policy and other exhibits referenced herein, the court cites the page number generated by CM/ECF.

Lex-London Policy, to the extent that the Lex-London Policy is not inconsistent with the Policies. (*See* Lambdin Decl. ¶ 3, Ex. C ("Novae, Apollo, & ANV Policy") at 8; *id.*, Ex. D ("SCOR Policy") at 9; *id.*, Ex. E ("Starstone Policy") at 9; *id.*, Ex. F ("Hiscox/Starr Policy") at 9.) Additionally, each Policy contains an "NMA 1998 Service of Suit Clause (USA)" ("the NMA 1998 Endorsement"). The NMA 1998 Endorsement requires that, "in the event of the failure of the [Defendants] hereon to pay any amount claimed to be due hereunder, the [Defendants] . . . will submit to the jurisdiction of a Court of competent jurisdiction within the United States." (Novae, Apollo, & ANV Policy at 19; SCOR Policy at 20; Starstone Policy at 19; Hiscox/Starr Policy at 20.) According to Weyerhaeuser, the NMA 1998 Endorsement demonstrates that the parties intended to submit coverage disputes to courts in the United States, not arbitration in London. (*See* MSJ at 5-11.)

After Weyerhaeuser filed suit, former Defendant XL Catlin Syndicate 2003 ("XL Catlin") filed a parallel action ("the XL Catlin Action") in the High Court of Justice of England and Wales ("the English High Court"). (*See* Stip. MTS (Dkt. # 12) at 1.) On December 21, 2018, the English High Court ruled that, under the language of the policy XL Catlin issued Weyerhaeuser, Weyerhaeuser is required to arbitrate insurance coverage disputes with XL Catlin in London. (*See* 1/2/19 JSR (Dkt. # 59) at 2, Exs. A, B.) The relevant language in the XL Catlin policy is the same as that in Defendants' policies. (*See* Cordell Decl. (Dkt. # 6) ¶ 6.) While the XL Catlin Action was pending, Weyerhaeuser filed a motion for summary judgment. (*See* MSJ.) After the English High Court issued its decision, the court ordered the parties to submit supplemental briefing on

the preclusive effects, if any, of the English High Court's ruling with respect to Weyerhaeuser's action against Defendants. (1/25/19 Order (Dkt. # 64) at 2); 1/31/19 Order (Dkt. # 66) at 1-2.) Supplemental briefing closed on February 15, 2019. (1/31/19 Order at 2.)

Hiscox/Starr now moves to reopen summary judgment briefing. (*See* MTR.) Hiscox/Starr represents that there is good cause to reopen briefing because it "recently learned" that three non-party excess liability carriers—Chubb Bermuda Insurance Ltd. ("Chubb"), Endurance Specialty Insurance Ltd. ("Endurance"), and Allied World Assurance Company Ltd. ("Allied") (collectively, "the Non-Party Insurers")—have obtained anti-suit injunctions against Weyerhaeuser in courts in the United Kingdom. (*Id.* at 2.) Like Defendants' Policies, the Non-Party Insurers' policies sit atop the Lex-London Policy in Weyerhaeuser's coverage tower. (*See id.* at 2; Resp. at 2-3.) According to Hiscox/Starr, the details of the foreign proceedings involving the Non-Party Insurers are "clearly relevant to whether [D]efendant[s] . . . are entitled to arbitration in London." (MTR at 4.)

### III. ANALYSIS

A district court has broad discretion to determine whether a party may supplement the record on summary judgment. *See, e.g.*, *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) (noting that the Ninth Circuit "review[s] . . . challenges to trial court management for abuse of discretion"); *Moreno v. Ross Is. Sand & Gravel Co.*, No. 2:13-cv-00691-KJM-KJN, 2015 WL 5604443, at *5 (E.D. Cal. Sept. 23, 2015) (noting that "[a] district court has discretion to permit a litigant to supplement the summary

judgment record") (citing *Betz v. Trainer Wortham & Co.*, 610 F.3d 1169, 1171 (9th Cir. 2010)). When deciding motions to supplement the record, the court should be mindful that public policy favors the disposition of cases on their merits, and that "disposition of a case on a more complete record must be preferred to disposition on a less complete record." *Block v. Solis*, No. C08-1850JLR, 2010 WL 2079688, at *9 (W.D. Wash. May 20, 2010) (citing *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006) (en banc)).

Weyerhaeuser argues that the additional briefing Hiscox/Starr seeks is not relevant to the pending summary judgment motion. As Weyerhaeuser points out, the policies issued by the Non-Party Insurers include dispute resolution provisions different than those found in Defendants' Policies. (Resp. at 2.) Like Defendants' Policies, the Non-Party Insurers' policies incorporate the Lex-London Policy by reference. (*Id.* at 2.) However, none of the Non-Party Insurers' policies include the NMA 1998 Endorsement. (*See generally* Sheridan Decl. (Dkt. # 83) ¶ 2, Ex. A ("Chubb Policy"); *id.* ¶ 3, Ex. B ("Endurance Policy"); *id.* ¶ 4, Ex. C ("Allied Policy").) Rather, the Non-Party Insurers' policies include an express arbitration endorsement providing that any dispute or claim arising out of or relating to the policies must be submitted to arbitration in London. (Chubb Policy at 7; Endurance Policy at 11; Allied Policy at 21.) The arbitration endorsement found in the Non-Party Insurers' policies is not written into any of Defendants' Policies. (*See* Resp. at 3; *see generally* Novae, Apollo, & ANV Policy; SCOR Policy; Starstone Policy; Hiscox/Starr Policy.) Weyerhaeuser represents that the Non-Party Insurers sought anti-suit injunctions in the United Kingdom pursuant to the

arbitration endorsements in their policies. (Resp. at 4.) Weyerhaeuser has since resolved those actions through confidential agreements with the Non-Party Insurers. (*Id.*; *see also* Sheridan Decl. ¶ 6.)

Hiscox/Starr fails to acknowledge the distinct dispute resolution provisions found in the Non-Party Insurers' policies and Defendants' Policies. (*See generally* MTR; Reply.) Rather, Hiscox/Starr summarily asserts that, because the Non-Party Insurers' policies follow form to the Lex-London Policy, "the treatment of one policy is relevant to the others." (Reply at 2.) That statement paints with too broad a brush. As the court has acknowledged, the XL Catlin Action may have some bearing on Weyerhaeuser's summary judgment motion—but only because, like the Policies, the XL Catlin policy both follows form to the Lex-London Policy and contains the NMA 1998 Endorsement. (*See* 6/18/19 Order (Dkt. # 84) at 7.) Absent that identity of language, the court would have no reason to consider the outcome of foreign proceedings involving non-parties. In short, Hiscox/Starr fails to show that the subject of its requested additional briefing is relevant to any question before the court.[3] The court thus DENIES Hiscox/Starr's motion to reopen summary judgment briefing.

//

//

---

[3] In its reply, Hiscox/Starr discusses at length "the leading English case of *Ace Capital Ltd. and [O]thers v. CMS Energy Corporation*." (Reply at 3-5; *see also* Crow Decl. ¶ 2, Ex. 1.) Hiscox/Starr alleges only that XL Catlin "relied on" the *Ace Capital* case in the XL Catlin Action. (Reply at 3.) To the extent Hiscox/Starr believes *Ace Capital* is relevant to the issues before the court, it should have discussed the case in its supplemental briefing on the XL Catlin Action.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Hiscox/Starr's motion to reopen summary judgment briefing. (Dkt. # 79.)

Dated this 25th day of June, 2019.

*[signature]*

The Honorable James L. Robart
U.S. District Court Judge