UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WEYERHAEUSER COMPANY,<br><br>　　　　　　　Plaintiff,<br>　v.<br>NOVAE SYNDICATE 2007, et al.,<br>　　　　　　　Defendants. | CASE NO. C18-0585JLR<br><br>ORDER DISMISSING ACTION AS NONJUSTICIABLE AND VACATING PRIOR ORDERS |

## I.　INTRODUCTION

Before the court are Plaintiff Weyerhaeuser Company's ("Weyerhaeuser") and Defendants Hiscox Dedicated Corporate Member Limited as Representative Member of Syndicate 33 at Lloyds and Starr Underwriting Agents Ltd.'s (collectively, "Defendants") responses to the court's July 22, 2019, order to show cause why the court should not dismiss this case as nonjusticiable. (*See* Pl. Resp. (Dkt. # 93); Defs. Resp. (Dkt. # 91); *see also* 7/22/19 Order (Dkt. # 90).) The court heard oral argument on August 13, 2019 (8/2/19 Order (Dkt. # 96); *see also* Min. Entry (Dkt. # 103); Tr. (Dkt. # 108) (sealed)),

and the parties submitted supplemental briefs after oral argument (*see* Pl. Supp. Br. (Dkt. # 107); Defs. Supp. Br. (Dkt. # 106)). The court has reviewed the parties' responses and supplemental briefs, the relevant portions of the record, and the applicable law. Being fully advised, the court DISMISSES this case as nonjusticiable, VACATES its prior orders, and STRIKES the trial date and related pretrial dates.

## II. BACKGROUND

### A. Factual Background

This is a declaratory judgment action involving excess liability insurance policies that Weyerhaeuser purchased from Defendants for the 2016-17 policy year. (*See generally* Compl. (Dkt. # 1).) During that period, Weyerhaeuser incurred substantial liability for alleged property damage and personal injuries related to a Weyerhaeuser product. (*Id.* ¶¶ 18-20.)

The insurance policy that Weyerhaeuser purchased from Defendants ("the Policy") is part of a six-layer ladder that provides up to $300 million in excess liability coverage. (Lambdin Decl. (Dkt. # 37) ¶ 2.) The Policy forms the bulk of the ladder's fifth layer of coverage. (*See id.*, Ex. A; *see also* Lambdin Decl. ¶ 3, Ex. F ("Hiscox/Starr Policy").[1])

Non-party Lex London Casualty Corp. ("Lex-London"), Weyerhaeuser's primary carrier, issued the first-layer policy in the coverage ladder ("the Lead Underlying Policy"). (Lambdin Decl. ¶ 2, Ex. B.) The Lead Underlying Policy includes an

---

[1] When citing the Hiscox/Starr Policy and other exhibits authenticated by Mr. Lambdin's declaration, the court cites the page number generated by the court's electronic filing system.

"arbitration endorsement," which provides that any dispute "arising out of or relating to" to the Lead Underlying Policy must be arbitrated in London ("the London Arbitration Clause"). (*Id.* at 41.) Specifically, the London Arbitration Clause states:

> It is acknowledged and agreed that, notwithstanding anything to the contrary in the policy, any dispute, controversy or claim arising out of or relating to this policy or to the breach, cancellation, termination or validity of this Policy shall be finally and fully determined in London, England under the provisions of the Arbitration Act of 1996 (["]Act") and/or statutory modifications or amendments thereto, for the time being in force, by a Board composed of three arbitrators to be selected for each controversy[.] . . .

(*Id.*) Additionally, the Lead Underlying Policy includes a "service of suit" clause. (*See id.* at 44.) That clause provides that, "[s]olely for the purpose of effectuating arbitration, in the event of the failure of [Lex-London] to pay any amount claimed to be due," Lex-London "will submit to the jurisdiction of any court of competent jurisdiction within the United States." (*Id.*)

Defendants' Policy incorporates by reference "the same terms, definitions, exclusions and conditions . . . contained in the Lead Underlying Policy," except to the extent that the two are inconsistent. (*See* Hiscox/Starr Policy at 9.) Unlike the Lead Underlying Policy, the Policy includes a clause titled "Service of Suit Clause (U.S.A.) N.M.A. 1998" ("the N.M.A. 1998 Clause"). (*See id.* at 20.) The N.M.A. 1998 Clause states:

> It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.

//

(*Id.*)  The London Arbitration Clause does not expressly appear in Defendants' Policy.  (*See generally id.*)

B.     **Procedural History**

Weyerhaeuser filed this action on April 20, 2018, seeking a judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, that it is not required to arbitrate in London any coverage dispute with Defendants that may arise under the Policy.[2]  (*See* Compl. ¶¶ 35-37.)  Weyerhaeuser contends that, because the N.M.A. 1998 Clause conflicts with the London Arbitration Clause, which is purportedly incorporated by reference into the Policy, the N.M.A. 1998 Clause controls.  (*Id.* ¶¶ 26-31.)  Accordingly, in Weyerhaeuser's view, Defendants may not invoke the London Arbitration Clause and must "litigate any coverage disputes in the U.S. jurisdiction of Weyerhaeuser's choosing."  (*Id.* ¶¶ 29-30.)  In the complaint, Weyerhaeuser acknowledges that "[a] justiciable controversy does not yet exist between the parties regarding coverage" under the Policy.  (*Id.* ¶ 1.)

Shortly after Weyerhaeuser filed suit, former Defendant XL Catlin Syndicate ("XL Catlin") filed a parallel action ("the English Action") in the High Court of Justice of England and Wales ("the English High Court").  (Cordell Decl. (Dkt. # 6) ¶ 3; Stip.

---

[2] In the complaint, Weyerhaeuser named several Defendants that have since settled or been dismissed.  (*See* 6/27/18 Order (Dkt. # 23) (granting stipulated motion to dismiss former Defendant Allianz Underwriters Insurance Company); 1/2/19 Order (Dkt. # 60) (granting stipulated motion to dismiss former Defendant XL Catlin Syndicate); Not. of Settlement (Dkt. # 100) (giving notice of settlement between Weyerhaeuser and former Defendants Novae Syndicate 2007, Apollo Liability Consortium 9984, ANV Consortium 9148, SCOR UK Company Ltd., and Starstone Syndicate 1301).)

MTS (Dkt. # 12) at 1.) Like Defendants' Policy, XL Catlin's policy (1) incorporates by reference the Lead Underlying Policy, and (2) includes the N.M.A. 1998 Clause. (*See* Cordell Decl. ¶ 6.) After XL Catlin filed the English Action, Weyerhaeuser sought, and the court granted, a temporary restraining order that barred Defendants from seeking in another forum an order enjoining Weyerhaeuser from proceeding with this action.[3] (*See* TRO Mot. (Dkt. # 4); TRO (Dkt. # 7).) Weyerhaeuser and Defendants subsequently stipulated to an order enjoining Defendants "from instituting or joining in any action, in any other forum, aimed at securing a determination on the issue whether Weyerhaeuser is required, under the policies issued by . . . Defendants, to arbitrate disputes regarding coverage under those policies." (5/21/18 Order (Dkt. # 17) at 4.)

The English High Court decided the English Action on December 21, 2018. (*See* 1/2/19 JSR (Dkt. # 59) at 2, Ex. A ("English Final Order"), Ex. B ("English Approved Judgment").) In brief, the English High Court concluded that XL Catlin's policy incorporates the London Arbitration Clause from the Lead Underlying Policy, and, as a result, the parties must refer all disputes related to XL Catlin's policy to arbitration in London. (English Final Order ¶¶ 1-9; English Approved Judgment ¶¶ 7-25.) The English High Court further enjoined Weyerhaeuser from maintaining proceedings against XL Catlin in this court. (English Final Order ¶ 3.) Shortly thereafter, Weyerhaeuser dismissed XL Catlin. (1/2/19 Order (Dkt. # 61) at 2.) The court then ordered the parties to submit supplemental briefing on the preclusive effects, if any, of the English High

---

[3] Additionally, the court stayed this case as to XL Catlin while the English Action was pending. (5/21/18 Order (Dkt. # 14) at 2; 8/6/18 JSR (Dkt. # 33) at 2.)

Court's decision with respect to Weyerhaeuser's action against Defendants. (1/25/19 Order (Dkt. # 64); 1/31/19 Order (Dkt. # 66).)

Weyerhaeuser filed a motion for summary judgment while the English Action was pending. (*See* MSJ (Dkt. # 36).) While that motion was under advisement, the court issued an order to show cause why this case should not be dismissed as nonjusticiable for failure to present an "actual controversy" within the meaning of the Declaratory Judgment Act. *See* 28 U.S.C. § 2201(a); (*see also* 7/22/19 Order.) Specifically, the court emphasized that, at the time Weyerhaeuser filed its complaint, the parties had not encountered a coverage dispute under the Policy, and, accordingly, Defendants had not initiated or sought to compel arbitration. (*See id.* at 3-4.) The court voiced its concern that Weyerhaeuser's action effectively sought an "advisory opinion" on a matter of contract interpretation that was not yet implicated in a live dispute between the parties. (*Id.* at 4.)

The parties' responses to the court's show-cause order are now before the court. (*See* Pl. Resp.; Defs. Resp.) Weyerhaeuser argues that the Declaratory Judgment Act's "actual controversy" requirement "is satisfied by the threat of an actual injury like the threatened enforcement of a disputed arbitration provision." (Pl. Resp. at 7.) Weyerhaeuser maintains that such a threat "is clearly present in this case." (*Id.*) Defendants, in contrast, represent that "Weyerhaeuser has yet to allege contractual or extra-contractual coverage-based claims against Defendants," and argue that Weyerhaeuser's action "asks the court to address . . . issues that may or may not arise in

//

some hypothetical, future action that has not been initiated." (Defs. Resp. at 6.) The court summarizes the applicable law before addressing the parties' arguments.

### III. DISCUSSION

**A. Legal Standards**

The concept of justiciability "expresses the jurisdictional limitations imposed upon federal courts by the 'case or controversy' requirement" of Article III of the United States Constitution. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007) (citation omitted); U.S. Const., art. III, § 2. Justiciability is a threshold matter that courts have an independent obligation to evaluate, *sua sponte*, if necessary, before reaching the merits of a case. *See, e.g.*, *Am. Civil Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006); *see also Toumajian v. Frailey,* 135 F. 3d 648, 652 (9th Cir. 1998) ("In this action, as in all actions before a federal court, the necessary and constitutional predicate for any decision is a determination that the court has jurisdiction—that is[,] the power— to adjudicate the dispute.").

In relevant part, the Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "case of actual controversy" refers to the types of cases and controversies that are justiciable under Article III of the Constitution. *See MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 126-27 (2007). An actual controversy exists within the meaning of the Declaratory Judgment Act when the dispute is "definite and concrete, touching the legal relations of

parties having adverse legal interests." *Id.* at 127 (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-41 (1937)). Further, the dispute must be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *Id.* (internal quotation marks omitted). The basic question in each case is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)). The jurisdictional inquiry "is concerned with the facts that exist when the plaintiff originally filed its complaint . . . ." *Cisco Sys., Inc. v. Alberta Telecomms. Research Ctr.*, 892 F. Supp. 2d 1226, 1230 (N.D. Cal. 2012), *aff'd*, 538 F. App'x 894 (Fed. Cir. 2013) (citing *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.,* 599 F.3d 1377, 1384 (Fed. Cir. 2010)).

**B.     Analysis**

The court must determine whether, based on the allegations in the complaint, the parties' dispute about the applicability of the London Arbitration Clause is "of sufficient immediacy and reality" to be ripe for adjudication. *See MedImmune*, 549 U.S. at 127. In the complaint, Weyerhaeuser acknowledges that "[a] justiciable controversy does not yet exist between the parties regarding coverage" under Defendants' Policy. (Compl. ¶ 1.) However, Weyerhaeuser represents that it "has incurred, or expects to incur, covered defense costs and liabilities in connection with [an allegedly defective Weyerhaeuser product] that exceed the applicable coverage limits of all of [Defendants'] [p]olicies."

(*Id.* ¶ 22.) Weyerhaeuser further states that Lex-London—its first-layer excess carrier—has already paid Weyerhaeuser "the full amount of its policy limits . . . ." (*Id.* ¶¶ 22-23.) According to Weyerhaeuser, "Defendants have neither confirmed that resolution of future disputes, should they arise, will occur in a Washington State forum nor disclaimed any intention to initiate a competing coverage arbitration and/or litigation outside of Washington." (*Id.* ¶ 24.) Weyerhaeuser thus contends that "[t]here is an actual and justiciable controversy between Plaintiff and Defendants as to the arbitrability of the parties' disputes regarding or arising under [Defendants'] [p]olicies and the proper venue for any such litigation." (*Id.* ¶ 37.)

On the justiciability spectrum, this case falls within a decidedly gray area. On one hand, there is no doubt that the parties' interests are "adverse": they disagree as to whether the London Arbitration Clause applies to any future coverage dispute that may arise under the Policy. *See MedImmune*, 549 U.S. at 127. Moreover, Weyerhaeuser anticipates that it will exhaust the coverage limits of not only Defendants' Policy, but all policies in its coverage ladder. (*See* Compl. ¶¶ 22-23.) It thus seems inevitable that Weyerhaeuser will seek to hold Defendants to their obligations under the Policy. (*See id.*) On the other hand, the complaint makes clear that no underlying coverage dispute existed at the time the complaint was filed. (*See id.* ¶ 1 ("A justiciable controversy does not yet exist between the parties regarding coverage, but Weyerhaeuser expressly reserves the right to amend this Complaint to include such a dispute should the same arise.").) The complaint does not allege that Defendants commenced an action to compel arbitration; nor does it indicate that Defendants threatened to compel the arbitration of a

specific, substantive dispute regarding their liabilities under the Policy. (*See generally id.*) Weyerhaeuser thus appears to have brought this case as a preemptive measure, with the aim of securing a determination as to where a coverage dispute must be litigated before such a dispute arises.

In assessing whether the facts as alleged present an "actual controversy" within the meaning of the Declaratory Judgment Act, *see* 28 U.S.C. § 2201(a), the court has identified two lines of relevant authority. First, as several courts have recognized, "litigation over insurance coverage has become the paradigm for asserting jurisdiction [under the Declaratory Judgment Act] despite future contingencies that will determine whether a controversy actually ever becomes real." *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (internal quotation marks and citation omitted). For example, courts have entertained declaratory judgment actions to determine such matters as the extent of liability coverage, whether the insured has waived provisions of a policy, and whether the insurer is required to defend an action against its insured. *See* Wright, Miller, & Kane, 10B Fed. Prac. & Proc. Civ. § 2760 (4th ed. 2019) (collecting insurance-related declaratory judgment cases); *see also Md. Cas. Co.*, 312 U.S. at 273 (holding that an insurer's declaratory judgment action regarding its duty to defend and indemnify was ripe, even when the underlying liability action in state court had not yet proceeded to judgment).

Although such cases suggest a generous approach to the Declaratory Judgment Act's "actual controversy" requirement in the insurance context, *see, e.g.*, *Fairchild*, 961 F.2d at 35, the court finds that this action presents distinct considerations. Rather than

fighting over coverage-related duties and liabilities under the terms of the Policy, the parties disagree about the forum where such disputes—should they develop in the future—may be addressed. (*See generally* Compl.). The court has found, and the parties cite, no authority for the proposition that a court may issue a declaratory judgment on a policy's dispute resolution mechanisms absent an existing or imminent underlying coverage dispute.

In the second line of relevant authority, courts have concluded that a declaratory judgment action concerning the arbitrability of a future, hypothetical conflict is nonjusticiable. *See, e.g.*, *Jones v. Sears Roebuck & Co.*, 301 F. App'x 276, 281-84 (4th Cir. 2008) (upholding the dismissal of claims as nonjusticiable where the plaintiffs alleged that the arbitration provision of a credit card agreement was unconscionable, because "none of the [d]efendants has threatened to invoke the arbitration provision"); *Lee v. Am. Express Travel Related Servs.*, No. C 07-04765, 2007 WL 4287557, at *5 (N.D. Cal. Dec. 6, 2007) (dismissing as nonjusticiable the plaintiffs' claim that the arbitration clause in a credit card contract was unlawful, where the arbitration clause had "not been implicated in any actual dispute between the parties"); *Posern v. Prudential Secs., Inc.*, No. C-03-0507SC, 2004 WL 771399, at *8 (N.D. Cal. Feb. 18, 2004) (dismissing a claim for a declaratory judgment invalidating an arbitration provision, where, because the defendant "has not filed a motion to compel arbitration, the declaratory relief that [the plaintiffs] seek[] appears speculative"); *Rivera v. Salomon Smith Barney Inc.*, No. 01 Civ. 9282(RWS), 2002 WL 31106418, at *2-4 (S.D.N.Y. Sept. 20, 2002) (dismissing an action as nonjusticiable where the plaintiff sought a declaratory

judgment to determine whether potential, future claims against her former employer were subject to mandatory arbitration); *Tamplenizza v. Josephthal & Co.*, 32 F. Supp. 2d 702, 704 (S.D.N.Y. 1999) (finding that the plaintiff's request for a declaratory judgment that an arbitration agreement was null and void "strains the concept of 'case or controversy' to its outer limit," absent an actual dispute between the parties).

Weyerhaeuser tries to distinguish these cases on the ground that they "only indicate that a potential dispute about an arbitration provision[,] [which] the defendant has indicated it does not intend to enforce[,] may not be justiciable." (Pl. Resp. at 8 (emphasis omitted).) Weyerhaeuser suggests that, unlike in the cases cited above, Defendants have "threatened" to enforce the London Arbitration Clause. (*Id.* at 9.) But, such allegations do not appear in the complaint, which merely states that Defendants have not "confirmed that resolution of future disputes, should they arise, will occur in a Washington State forum . . . ." (*see* Compl. ¶ 24.) Even if Defendants had expressly threatened to invoke the London Arbitration Clause in the event of a substantive coverage dispute, the court is not convinced that factor, alone, would transform this case into a controversy ripe for review. The court would still have to grapple with the fact that Weyerhaeuser's complaint does not allege a dispute about Defendants' liabilities that could lead Defendants to invoke the dispute resolution mechanism under the Policy. (*See generally id.*)

Weyerhaeuser also contends that, should the court decline to rule on arbitrability and dismiss this case as nonjusticiable, Weyerhaeuser would suffer "immediate harm." (Pl. Resp. at 9.) Weyerhaeuser alleges that "[t]his lawsuit and the relief sought by

Weyerhaeuser was precipitated by the decision of insurers like XL Catlin to seek anti-suit injunctions in the United Kingdom." (*Id.*) Weyerhaeuser further argues that "the failure to determine issues regarding the enforceability of the forum selection and arbitration clause would open the door to similar filings in the United Kingdom by . . . [Defendants] and subject Weyerhaeuser to [the] immediate, substantial and irreparable harm of being . . . forced to argue its case . . . in a foreign court." (*Id.* (internal quotation marks and citation omitted).) The court understands Weyerhaeuser's argument. However, XL Catlin filed suit in England only after Weyerhaeuser filed its complaint. (*See* Stip. MTS at 1.) The court thus fails to see how the existence of the English Action, or the potential for Defendants to file future suits in foreign fora, supports the court's exercise of jurisdiction—which must be judged at the time the complaint is filed.[4] *See Cisco Sys.*, 892 F. Supp. 2d at 1230. More generally, Weyerhaeuser cites no authority for the proposition that the court may premise its exercise of jurisdiction on harm that might befall Weyerhaeuser only as a result of the court's dismissal of its complaint on justiciability grounds. (*See generally* Pl. Resp.)

//

---

[4] Additionally, in its response, Weyerhaeuser alleges that three other insurers in the liability coverage ladder—Chubb Bermuda Insurance Ltd., Endurance Specialty Insurance Ltd., and Allied World Assurance Company Ltd.— filed actions in England seeking anti-suit injunctions before Weyerhaeuser filed suit in this court. (Pl. Resp. at 2.) As the court recognized earlier, however, the policies Weyerhaeuser purchased from those insurers are fundamentally different from Defendants' Policy, because they do not include the N.M.A. 1998 Clause. (*See* 6/25/19 Order (Dkt. # 87) at 5-6.) Weyerhaeuser's contention that it filed this action "to prevent the [Defendants] from employing the same tactic already employed by other insurers as a means of avoiding the plain language of the N.M.A. 1998 [Clause]," thus rings hollow. (*See* Pls. Resp. at 4.)

By the same token, Weyerhaeuser's contention that, since the filing of the complaint, "it [has become] . . . clear that an underlying coverage dispute now exists between the parties," is unavailing. (Pls. Resp. at 10.) Specifically, Weyerhaeuser represents that Defendants have failed to reimburse Weyerhaeuser's losses, even after Weyerhaeuser filed notices under Washington's Insurance Fair Conduct Act ("IFCA"). (Pls. Resp. at 10; Sheridan Decl. (Dkt. # 94) ¶¶ 4-5.) At oral argument, the parties also disclosed that, a few days ago, Weyerhaeuser filed a state-court action against Defendants for alleged violations of IFCA and Washington's Consumer Protection Act, among other causes of action.[5] (Tr. at 17:6-9, 24:1-10.) Had Weyerhaeuser alleged a substantive coverage dispute existed at the time the complaint was filed, the court would be inclined toward finding that this matter presents a justiciable controversy. But Weyerhaeuser did not, and the court is bound by the rule that, "if there was not a case or controversy at the time of filing, subsequent events cannot make subject matter jurisdiction proper." *Cisco Sys.*, 892 F. Supp. 2d at 1230.[6]

---

[5] Defendants removed the state-court action. *See Weyerhaeuser Co. v. Hiscox Dedicated Corp. Member Ltd., et al.*, No. C19-1277RSL (W.D. Wash.).

[6] At oral argument, Weyerhaeuser argued that the court may consider events that occurred after the filing of the complaint to determine whether the case presents an actual controversy for purposes of the Declaratory Judgment Act. (*See* Tr. at 6:5-9.) The only declaratory judgment case that Weyerhaeuser cites for this proposition is *Regions Ins., Inc. v. Ace Prop. & Cas. Ins. Co.*, 80 F. Supp. 3d 730, 731-34 (M.D. La. 2015). (*See* Pl. Supp. Br. at 1 n.2.) In *Regions*, the defendant moved to dismiss as unripe the plaintiff's declaratory judgment action on the ground that the defendant was engaged in an arbitration proceeding that could affect the plaintiff's claims against the defendant. 80 F. Supp. 3d at 732. Notably, that arbitration proceeding commenced after the plaintiff filed the complaint. *Id.* The district court determined that "no precedent within the Fifth Circuit . . . prohibits or discourages the [c]ourt from considering developments after the filing of the Complaint [in] evaluating *ripeness*, separate from other aspects of subject matter jurisdiction." *Id.* at 733. The court has considered

In sum, to exercise jurisdiction in this matter as currently pleaded, the court would have to entertain a series of contingencies: (1) that Weyerhaeuser has exhausted or will imminently exhaust the first four layers of the excess liability ladder, (2) that Defendants will deny Weyerhaeuser coverage under the Policy or a substantive dispute over Defendants' liability will otherwise develop; (3) that the parties will fail to resolve that substantive dispute among themselves; and (4) that Defendants will invoke the London Arbitration Clause to resolve the coverage dispute. From the vantage point of the complaint, only the first development appears to exist in fact; the remaining three are hypothetical and contingent, and, should any one of them not come to pass, the court's ruling on the applicability of the London Arbitration Clause would be "an opinion advising what the law would be upon a hypothetical set of facts." *MedImmune*, 549 U.S. at 127 (internal quotation marks omitted); *see also Portland Police Ass'n v. City of Portland*, 658 F.2d 1272, 1274 (9th Cir. 1981) (finding a controversy is not justiciable where the plaintiffs' claims for relief were premised on a "series of contingencies"). The

---

*Regions* and finds it unpersuasive. First, the facts alleged in the *Regions* complaint established that an actual controversy existed at the time the complaint was filed. *Id.* at 734. The *Regions* court effectively found that the contingencies that arose with the subsequent commencement of arbitration did not "undo" the existing controversy. *See id.* Moreover, in finding that jurisdiction was proper, the *Regions* court emphasized that the defendant had "not identified any further factual development necessary concerning the acts allegedly creating the liability" at the center of the parties' dispute. *Id.* at 735. Here, in contrast, Defendants do not urge the court to look to events after the filing of the complaint that might render the dispute unripe; rather, Plaintiffs urge the court to look to events after the filing of the complaint that could conceivably ripen the dispute. *Regions* is thus factually inapposite. Furthermore, Weyerhaeuser cites no other authority that suggests a district court may look to events after a declaratory judgment action is filed to determine whether the case presents an actual controversy under the Declaratory Judgment Act, and the court has found none to that effect. *Cf. Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.").

court therefore finds that this case does not present an "actual controversy" within the meaning of the Declaratory Judgment Act. *See* 28 U.S.C. § 2201(a). Accordingly, the court DISMISSES this action as nonjusticiable.

**C.    Amendment**

Weyerhaeuser seeks leave to amend the complaint in the event of dismissal. (*See* Tr. at 8:23-9:11, 21:14-22:9.) Defendants argue that the court should not grant Weyerhaeuser leave to amend because the deadlines for amending pleadings and completing discovery expired on March 20, 2019, and May 20, 2019, respectively, and amendment would be futile. (Defs. Supp. Br. at 4; *see also* Sched. Order (Dkt. # 29) at 1.)

Because this case was nonjusticiable when it was filed, the court is not convinced that it has the power grant Weyerhaeuser leave to amend the complaint. *See Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) (stating that, "[if] jurisdiction is lacking at the outset, the district court has no power to do anything with the case except dismiss"); *see also id.* ("If jurisdiction was lacking, then the court's various orders, including that granting leave to amend the complaint, were nullities.").[7] However, even assuming the court may properly grant a

---

[7] Weyerhaeuser emphasizes that "[d]efective allegations of jurisdiction may be amended, upon terms, in trial or appellate courts" under 28 U.S.C. § 1653. (Pl. Supp. Br. (quoting *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n.6 (9th Cir. 2002).) As the Ninth Circuit explained in *Morongo*, however, "Section 1653 provides a remedy for defective *allegations* only; 'it does not provide a remedy for defective jurisdiction itself.'" 858 F.2d at 1380 n.3 (quoting *Field v. Volkswagenwerk AG*, 626 F.2d 293, 306 (3d Cir. 1980).) Where the jurisdictional defect is "one of substance," a district court has "no power to grant [the plaintiff] leave to amend its complaint." *Id.* at 1381 n.3; *see also Brennan v. Univ. of Kan.*, 451 F.2d 1287, 1289 (10th Cir. 1971) (stating that Section 1653 empowers courts to allow parties to correct "defects of form, not

party leave to amend a complaint that asserts nonjusticiable claims, the court finds that Weyerhaeuser has not established that it is entitled to leave to amend for the following reasons.

Under Federal Rule of Civil Procedure 15(a)(2), courts should "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, once the deadline for amending pleadings, as established in the court's scheduling order, has expired, Federal Rule Civil Procedure 16(b), rather than Rule 15(a), controls. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); Fed. R. Civ. P. 16(b). A party seeking to amend a pleading after the date specified in the scheduling order must first show "good cause" for amendment under Rule 16(b)(4). Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Johnson*, 975 F.2d at 608. "Unlike Rule 15(a)'s liberal amendment policy[,] which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. To show "good cause" a party must show that, despite its diligence, it could not meet the scheduling order's deadline. *Id.* If a party shows good cause, it must then demonstrate that the amendment is proper under Rule 15. *See id.* at 608; *MMMT Holdings Corp. v.*

---

substance") (footnote omitted). The court is not persuaded that this case is nonjusticiable merely because of defective allegations that could be cured with leave to amend. The complaint expressly acknowledges that "[a] justiciable controversy does not yet exist between the parties regarding coverage," and Weyerhaeuser has not convinced the court that other circumstances existed to create a justiciable controversy at the time the complaint was filed. (*See* Compl. ¶ 1.)

*NSGI Holdings, Inc.*, No. C12-01570RSL, 2014 WL 2573290, at *2 (W.D. Wash. June 9, 2014).

Here, Weyerhaeuser fails to show good cause for failing to move to amend the complaint before this late hour. At oral argument, Weyerhaeuser insisted that, if granted leave to amend, it could establish that a justiciable controversy existed at the time the complaint was filed. (Tr. at 21:25-22:9.) But, Weyerhaeuser has failed to explain why it could not have amended the complaint earlier to allege such facts, even though those circumstances purportedly existed as of April 2018. (*See id.*) Rather, Weyerhaeuser focuses on the prejudice it might suffer if not granted leave to amend. Specifically, at oral argument, Weyerhaeuser contended that, if the court dismisses the action without leave to amend, Defendants will be free to file a competing action in a foreign forum, precluding Weyerhaeuser's efforts to vindicate its supposed right to litigate coverage disputes in a court of its choosing. (*Id.* at 22:20-23:10.) The court understands Weyerhaeuser's argument but finds it has no bearing on the good cause inquiry. *See Johnson*, 975 F.2d at 609 (stating that, if the party seeking to amend its pleading after the deadline "was not diligent, the inquiry should end"). The court concludes that Weyerhaeuser was not diligent in seeking to amend its complaint and therefore DENIES Weyerhaeuser leave to amend.

**D.   Vacatur of Prior Orders**

Because the court lacked jurisdiction at the outset of this matter, its prior orders are "nullities" and must be vacated. *Morongo*, 858 F.2d at 1381; *see also Orff v. United States*, 358 F.3d 1137, 1149 (9th Cir. 2004) (finding that, because "the district court

never had jurisdiction to issue its rulings on the merits" of the plaintiffs' claims, "[w]e must therefore vacate as nullities the district court's rulings on the merits"). Accordingly, the court VACATES all prior orders entered in this matter.

In closing, the court recognizes that the foregoing inquiry into justiciability is not an academic exercise and has real effects on the parties and any subsequent litigation between them. The court further emphasizes that it does not dismiss this case for reasons of judicial economy or convenience, but rather because of substantive jurisdictional defects in the pleadings. As a court of limited jurisdiction, *see Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005), the court cannot stretch the limits of the Declaratory Judgment Act's "actual controversy" requirement simply because it would be more convenient for the parties or efficient for the court, *see* 28 U.S.C. § 2201(a); *Cf. Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 571-72 (2004) (stating that courts must assess jurisdiction as of the time of filing, "regardless of the costs [that rule] imposes" and notwithstanding considerations of "finality, efficiency, and economy") (internal quotation marks and citation omitted). Nor can the court conjure jurisdiction where none exists to forestall the potential that a party might have to litigate outside its first-choice forum.

### IV. CONCLUSION

For the foregoing reasons, the court DISMISSES this case as nonjusticiable, without prejudice to refiling should a justiciable controversy arise, and VACATES all prior orders issued in this matter. The court further STRIKES the trial date and related

//

pretrial dates and DIRECTS the Clerk to remove Weyerhaeuser's pending summary judgment motion (Dkt. # 36) and motions in limine (Dkt. # 97) from the court's calendar.

Dated this 16th day of August, 2019.

*[signature]*

The Honorable James L. Robart
U.S. District Court Judge